**Christopher Evans HUBBART, Petitioner–Appellant,**

v.

**Robert KNAPP; Atascadero State Hospital, Respondents–Appellees.**

**No. 03–16877.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 2004.

Filed Aug. 13, 2004.

Jonathan Grossman, Santa Clara, CA, for the petitioner-appellant.

Peggy S. Ruffra, Supervising Deputy Attorney General, Office of the Attorney General of the State of California, San Francisco, CA, for the respondents-appellees.

Before: GOODWIN, CANBY, and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Christopher Hubbart claims that his commitment under California's Sexually Violent Predator Act ("SVPA"), Cal. Welf. & Inst.Code § 6600, et seq., violates federal due process and equal protection, and he seeks habeas corpus relief. Hubbart was the first person confined under this latest California civil commitment statute, and his case follows an evolution of state efforts, civil and criminal, to contain and rehabilitate recidivist sex offenders. The California courts have rejected Hubbart's facial challenge to the SVPA and upheld its specific application in his case. On August 23, 2003, the district court denied Hubbart's federal habeas corpus petition. We affirm.

Hubbart admits to raping "about" 40 women throughout California between

1971 and 1982. He has been held under at least three different regulatory schemes designed to detain, treat and rehabilitate sex offenders. Two of these schemes have since been revoked. In fact, the government concedes that Hubbart was illegally detained for psychiatric treatment under former parole revocation regulation, Cal. Code Regs. tit. 15, § 2616(a)(7) (1994). Hubbart argues that this error is perpetuated by his commitment under the SVPA in violation of due process and equal protection.

I

Hubbart was first arrested on rape charges in Los Angeles in 1972. He has since admitted to raping 25 women in that area. At the time, Hubbart was deemed a "mentally disordered sex offender" under former Cal. Welf. & Inst.Code § 6300 and committed for treatment to Atascadero State Hospital ("ASH"). In 1979, upon the determination of ASH doctors that he posed no further threat, Hubbart was released from state custody.

Hubbart then moved to the San Francisco Bay Area and within two years raped another 15 women. In 1982, he was convicted on various counts of burglary, false imprisonment, and rape, and sentenced to 16 years in prison. He was paroled in 1990.

Shortly after release, Hubbart attempted to sexually assault two more women. In separate incidents, he followed the women off public buses, proceeded after them down the street, and attempted to grab each from behind. Both escaped uninjured. Hubbart's parole was revoked on June 27, 1990. After three more years in prison, Hubbart was paroled once again in 1993.

Hubbart's freedom did not last long. Although he did not violate the conditions of his release, the California Board of Pris-

on Terms nonetheless revoked his parole for psychiatric treatment pursuant to a former parole revocation regulation, Cal. Code Regs. tit. 15, § 2616(a)(7). Hubbart has been in state custody ever since.

Hubbart filed a state petition for habeas relief in October 1994, challenging his parole revocation. At the time, the parole regulation authorized the California Board of Prison Terms to revoke a parolee's release upon its unilateral determination that the parolee suffered from a mental disorder and was a danger to himself or others. On May 18, 1995, the California Supreme Court summarily denied Hubbart's petition.

On January 2, 1996, one day after California's SVPA became effective, the Santa Clara County District Attorney filed a petition to commit Hubbart under the new law. At the time, Hubbart was in custody under parole revocation regulation § 2616(a)(7). Hubbart immediately filed a demurrer to the SVPA petition. Arguing that the SVPA was unconstitutional on its face, Hubbart sought a writ of prohibition in the Supreme Court of California. The state's high court stayed Hubbart's SVPA proceedings pending its decision. Hubbart remained in custody.

Meanwhile, another detainee challenged parole revocation regulation § 2616(a)(7), raising similar claims to the ones Hubbart made in 1994. This time, on July 24, 1998, the California Court of Appeal held that the psychiatric parole revocation scheme exceeded the statutory authority of the Board of Prison Terms. *See Terhune v. Superior Court,* 65 Cal.App.4th 864, 868, 76 Cal.Rptr.2d 841 (1998). The regulation was subsequently revoked.

In light of *Terhune,* Hubbart filed a new state petition for habeas relief, challenging his detention under the recently invalidated parole revocation regulation. At the

time, Hubbart's facial challenge to the SVPA was still pending before the state supreme court. On December 22, 1998, the state superior court denied Hubbart's challenge to the parole regulation, ruling that Hubbart was no longer detained under the recently invalidated regulation, but was instead now in custody pursuant to the SVPA.

One month later, on January 21, 1999, the California Supreme Court rejected Hubbart's facial challenge to the SVPA. *See Hubbart v. Superior Court,* 19 Cal.4th 1138, 81 Cal.Rptr.2d 492, 969 P.2d 584 (1999). In a separate action, the state supreme court denied review of Hubbart's independent challenge to the parole revocation regulation.

With the stay on his SVPA proceedings lifted, Hubbart finally faced trial under the SVPA. Following a jury's determination that he was a sexually violent predator beyond a reasonable doubt, Hubbart was confined for a two-year term of civil commitment beginning March 21, 2000. The California Court of Appeal affirmed the commitment order, *see People v. Hubbart,* 88 Cal.App.4th 1202, 106 Cal.Rptr.2d 490 (2001), and the California Supreme Court denied review.

On March 7, 2002, Hubbart timely petitioned the federal district court for habeas relief pursuant to 28 U.S.C. § 2254. Two weeks later, well before the district court could rule on his petition, Hubbart's original two-year term of commitment under the SVPA expired.[1] The district court denied Hubbart's federal habeas petition on the merits on August 26, 2003, and Hubbart timely appealed to this court.

## II

■ The government argues that this case is moot because Hubbart petitions for habeas relief from his original term of commitment under the SVPA, which expired on March 21, 2002. *See* Cal. Welf. & Inst.Code § 6604 (establishing two-year terms of commitment). Although Hubbart currently remains in state custody under the SVPA, having been recommitted in 2002, the government contends that each two-year term of commitment under the SVPA constitutes a new and distinct civil action. *See Burris v. Hunter,* 290 F.Supp.2d 1097, 1101 (C.D.Cal.2003). Each recommitment requires fresh evaluation of Hubbart's current mental health and criminal predilection. *See* Cal. Welf. & Inst.Code § 6605(a). Therefore, the government argues that relief from Hubbart's original (expired) term would be meaningless and his case is therefore moot. *See Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).

■ We hold that Hubbart's habeas petition is not moot because his claims are capable of repetition yet evading review. This well-established exception to mootness applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* at 17, 118 S.Ct. 978 (citation and internal quotation marks omitted).

Hubbart's claims satisfy the second "capable of repetition" component of this analysis because he has already been subject to a second SVPA commitment pro-

---

1. In August 2002, the Santa Clara County Superior Court renewed Hubbart's commitment under the SVPA and committed him to a second two year term. At oral argument, the government asserted that Hubbart re-

mains in custody pursuant to this second term of commitment, which will expire in August 2004. Another commitment proceeding seeking a third two-year term is now pending.

ceeding, which he argues was just as unconstitutional as the first. Hubbart's claims "evade review" because a two-term commitment under the SVPA is "too short to be *fully litigated* prior to . . . [its] expiration." *Id.* (emphasis added); *see also Sibron v. New York*, 392 U.S. 40, 52–53, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) ("Many deep and abiding constitutional problems are encountered primarily at a level of . . . offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct.").

 A claim evades review if "the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002) (citation and quotation marks omitted). There is no dispute that neither this court nor the Supreme Court has given Hubbart's case full consideration. *See id.* at 1173–74 ("[A]n issue that 'evades review' is one which, in its regular course, resolves itself without allowing sufficient time for appellate review."); *see also Brown v. Allen*, 344 U.S. 443, 456, 73 S.Ct. 397, 97 L.Ed. 469 (1953) ("[T]he denial of certiorari imports no expression of opinion upon the merits of a case.") (quotation marks and citation omitted). While it is true that he has had his day in California's appellate courts, Hubbart has yet to "fully litigate" his habeas claims in federal court.

In *Alaska Ctr. for the Env't v. United States Forest Serv.*, 189 F.3d 851, 855 (9th Cir.1999), we held that a challenge to a National Forest Service permit could not be fully litigated within two years. We now hold that it is "almost certain" that a state detainee under California's civil commitment scheme for sexually violent preda-

tors will be unable to exhaust state remedies and "fully litigate" a habeas petition in federal courts within two years. *See Biodiversity Legal Found.*, 309 F.3d at 1173–74; *cf. First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (finding that 18 months is too short); *Spencer*, 523 U.S. at 17, 118 S.Ct. 978 (finding that three years provides enough time for a state prisoner to litigate federal habeas claims).

Furthermore, we reject the suggestion that Hubbart's petition has not evaded review because the California courts have already ruled on his claims. We hold that for purposes of determining mootness in connection with California's repeating pattern of two-year commitments under the SVPA, a federal constitutional claim evades review if the challenged action expires before a federal appellate court has the opportunity to fully consider the allegation. *See Biodiversity Legal Found.*, 309 F.3d at 1173 (holding that "full litigation" includes review by "this court" or the Supreme Court); *see also Brown*, 344 U.S. at 463–65, 73 S.Ct. 397 (holding that habeas litigation filed by state prisoners includes review by federal judges).

## III

### A

 On the merits, we review de novo the district court's denial of Hubbart's habeas petition. *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.2003). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), Hubbart is entitled to relief only if the state court's ruling is "contrary to, or involved an unreasonable application of," clearly established Supreme Court precedent. A state court decision is "contrary to" Supreme Court precedent if the state court (1) arrived at a conclusion opposite to that

reached by the Supreme Court on a question of law or (2) confronted facts that are materially indistinguishable from relevant Supreme Court precedent and arrived at an opposite conclusion. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of Supreme Court law occurs when "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495; *see also Powell v. Galaza,* 328 F.3d 558, 563 (9th Cir.2003) ("The state court need not cite or even be aware of the governing Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (internal quotation marks omitted).

### B

■ It is helpful to recognize that Hubbart is not directly attacking the state's habeas process—*i.e.,* his failure to win release from the parole revocation regulation invalidated by the California Court of Appeal in *Terhune,* 65 Cal.App.4th at 880, 76 Cal.Rptr.2d 841. "[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings." *Franzen v. Brinkman,* 877 F.2d 26 (9th Cir.1989). Instead, we must decide whether Hubbart's confinement under the SVPA violates federal constitutional law. *See id.*

Hubbart argues that his confinement violates federal due process because the state failed to follow its own rules in confining him under the SVPA. Hubbart asserts that the state's alleged error violates *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980).

We assume, along with the government and district court, that Hubbart was initially detained illegally under former parole revocation regulation § 2616(a)(7)

when his first SVPA commitment proceeding began. Hubbart argues that his current commitment under the SVPA violates state law because SVPA proceedings may only be initiated against persons already "in custody under the jurisdiction of the Department of Corrections." Cal. Welf. & Inst.Code § 6601(a)(1). Although Hubbart was undeniably "in custody" at the time his commitment proceedings began, he contends that his illegal detention under the invalidated parole revocation regulation cannot satisfy the SVPA's "in custody" prerequisite. He argues that the error continues to infect the lawfulness of his continued commitment under the SVPA and that the state court's alleged misapplication of the statute violates *Hicks.*

The California Court of Appeal rejected Hubbart's interpretation of the SVPA's "in custody" provision as a matter of state law. *See Hubbart,* 88 Cal.App.4th at 1229, 106 Cal.Rptr.2d 490. The state court held that the SVPA contains "no explicit requirement that a defendant's custody be lawful; it require[s] only that the person alleged to be an SVP was 'in custody under the jurisdiction of the Department of Corrections.'" *Id.* (quoting Cal. Welf. & Inst. Code § 6601(a)(1)). Accordingly, Hubbart's commitment proceedings complied with the SVPA's "in custody" requirement, despite the fact that he was held due to a "mistake of law" when his SVPA proceedings began. *Id.* (citing cases).

■ *The question before us is not whether the state court of* appeal applied an overbroad interpretation of the SVPA's "in custody" requirement, but whether that court's interpretation and application of the SVPA in this case violates federal due process. Federal habeas corpus relief is generally "unavailable for alleged error in the interpretation or application of state law." *Peltier v. Wright,* 15 F.3d 860, 861 (9th Cir.1994) (citation and quotation

marks omitted); *see also Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). We may not second-guess the California appellate court's construction of its own state law unless "it appears that its interpretation is an obvious subterfuge to evade consideration of a federal issue." *Peltier,* 15 F.3d at 862 (citing *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)); *cf. Rogers v. Tennessee,* 532 U.S. 451, 457, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001). We find no such subterfuge here.

██ It follows that the state court's denial of Hubbart's habeas petition is not contrary to, or an unreasonable application of, *Hicks v. Oklahoma.* Under *Hicks,* state courts must generally comply with state laws in sentencing prisoners, subject to the protections of federal due process. *See* 447 U.S. at 346, 100 S.Ct. 2227. Here, the California court ruled that Hubbart's confinement procedure did comply with state law. *Hubbart,* 88 Cal.App.4th at 1229, 106 Cal.Rptr.2d 490. Because we are concerned with the propriety of this ruling and Hubbart's commitment under the SVPA, rather than his previous confinement under the parole revocation regulation, *Hicks* is inapplicable.

Hubbart argues in the alternative that, even if the state complied with the SVPA's "in custody" requirement when it initiated its commitment proceedings, the state court's construction of the statute fails to provide minimum procedural safeguards required under *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under AEDPA, we again defer to the state court, which held that "there is no due process violation where the person was not in lawful custody at the time the petition was filed ... [provided that] cus-tody ... result[ed] from a good faith error rather than negligent or intentional wrongdoing." *Hubbart,* 88 Cal.App.4th at 1230, 106 Cal.Rptr.2d 490. The California courts apply *Mathews'* cost-benefit factors in four parts:

> [D]ue process under the SVP Act is not measured by the rights accorded a defendant in criminal proceedings, but by the standard applicable to civil proceedings: The extent of due process protection which must be accorded a civil litigant is tested by consideration of four factors: (1) the private interest [which] will be affected by the official action; (2) the risk of an erroneous deprivation ... through the procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards, and (4) the ... interest in informing individuals ... of the action and in [allowing] them to present their side of the story.... [W]hile the alleged sexually violent predator has a strong liberty interest, the government also has a strong interest in protecting the public from persons who are dangerous to others.

*Id.* (citation and quotation marks omitted); *see also Conservatorship of Moore,* 185 Cal.App.3d 718, 729, 229 Cal.Rptr. 875 (1986); *Civil Serv. Ass'n v. San Francisco,* 22 Cal.3d 552, 561, 150 Cal.Rptr. 129, 586 P.2d 162 (1978).

Because the state court applied the correct legal principle here, *see Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (applying *Mathews* ), we must deny Hubbart's due process claim unless the state court unreasonably applied *Mathews* to the facts of Hubbart's case. *See Williams,* 529 U.S. at 413, 120 S.Ct. 1495. The California appellate court concluded that "an SVPA commitment resulting from unlawful custody [does not] violate due process where, as here, the unlawful custody was the result of a good

faith error and where, as here, the SVP is provided with numerous procedural safeguards." *Hubbart,* 88 Cal.App.4th at 1230, 106 Cal.Rptr.2d 490. SVPA safeguards include requirements that accused sexually violent predators receive diagnoses from two psychiatrists or psychologists, assistance of counsel, and trial by jury on proof beyond a reasonable doubt. *See* Cal. Welf. & Inst.Code §§ 6602, 6603. As the state court concluded, "[a] person in unlawful custody who is alleged to be an SVP still has all of the procedural safeguards that the SVPA provides in order to decrease the risk of an erroneous liberty deprivation." *Hubbart,* 88 Cal.App.4th at 1230, 106 Cal.Rptr.2d 490.

In *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Supreme Court upheld against a due process challenge Kansas' civil commitment statute, which is similar in relevant respects to the SVPA. The Court held that state civil commitment schemes must at minimum follow "proper procedures and evidentiary standards" and require proof of dangerousness plus proof of an additional factor, such as mental disorder. *See id.* at 357–58, 117 S.Ct. 2072. These elements must be established by clear and convincing evidence. *See Addington,* 441 U.S. at 433, 99 S.Ct. 1804.

The California Court of Appeal held that the SVPA satisfies these due process requirements, even accounting for its interpretation of the SVPA's "in custody" prerequisite. *Hubbart,* 88 Cal.App.4th at 1230, 106 Cal.Rptr.2d 490 (citing, among others, Cal. Welf. & Inst.Code §§ 6601, 6603). Because we find no Supreme Court authority to the contrary, we reject Hubbart's due process claims.

C

Hubbart also casts his detention under parole revocation regulation § 2616(a)(7)

as a violation of the Equal Protection Clause. He argues that the state has no constitutional authority to distinguish his case from those of other sex offenders who would be eligible for commitment under the SVPA but for the fact that they were not unlawfully "in custody" pursuant to the former parole revocation regulation. In essence, Hubbart questions whether the state may constitutionally distinguish between those in custody under the SVPA due to a good faith error in law and those who are not in custody because the state did not revoke their parole or because they successfully challenged their pre-SVPA detention.

■■■ The California Court of Appeal found the distinction justified. It held that the state has "a compelling ... interest in identifying, confining, and treating persons who represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence" and that the SVPA "is narrowly tailored to apply to a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated." *Hubbart,* 88 Cal.App.4th at 1231, 106 Cal. Rptr.2d 490 (quotation marks and citations omitted). Although we do not ordinarily apply strict scrutiny review to civil commitment schemes, *see United States v. Sahhar,* 917 F.2d 1197, 1201 n. 4 (9th Cir.1990) (citing cases), we need not disturb the California court's heightened analysis here. We note that the Supreme Court has not squarely addressed the appropriate level of scrutiny, *see id.* at 1201, and hold that the California appellate court's conclusions here do not conflict with controlling authority.

The California appellate court's determination that the SVPA is narrowly tailored to further the state's compelling interest in identifying and containing sexually violent

prisoners before they are released from custody is certainly consistent with Justice Kennedy's observation in *Hendricks* that "the power of the State to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing and serious danger to society is well established." 521 U.S. at 372, 117 S.Ct. 2072 (Kennedy, J., concurring); *see also Addington*, 441 U.S. at 426, 99 S.Ct. 1804 ("[T]he state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill."). In addition, Hubbart's argument that the state has arbitrarily confined him in violation of equal protection essentially duplicates his unavailing due process claim and fails for the same reasons. *See Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (citing *Jones v. United States*, 463 U.S. 354, 362 n. 10, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)).

### D

 Finally, Hubbart claims that the SVPA violates equal protection law established in *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), because it applies a broader definition of "mental disorder" than California's Mentally Disordered Offender ("MDO") statute, which provides for involuntary commitment and treatment of potential state parolees. *Compare* Cal. Welf. & Inst.Code § 6600(c) (defining "mental disorder" under the SVPA), *with* Cal.Penal Code § 2962(a) (defining "severe mental disorder" under the MDO). In order to be committed under the SVPA, a prisoner must be diagnosed with a "mental disorder that makes the person a danger to the health and safety of others." Cal. Welf. & Inst.Code § 6600(a). The government concedes that a personality disorder qualifies as a "mental disorder"

under the SVPA, *see Hubbart*, 19 Cal.4th at 1158, 81 Cal.Rptr.2d 492, 969 P.2d 584, and that the same diagnosis would not satisfy MDO psychiatric requirements, *see* Cal.Penal Code § 2962(a) ("The term 'severe mental disorder' as used in this section does not include a personality or adjustment disorder[.]").

The California Court of Appeal found no constitutionally significant distinction between the two statutes. *See Hubbart*, 88 Cal.App.4th at 1218–19, 106 Cal.Rptr.2d 490. This decision is not contrary to Supreme Court authority. *Baxstrom* invalidated a New York commitment scheme that withheld certain procedural protections available to other detainees involuntarily committed by the state. *See* 383 U.S. at 110, 86 S.Ct. 760. *Jackson* held that potentially indefinite pretrial detention for psychiatric treatment violates equal protection if it applies "a more lenient commitment standard and [ ] a more stringent standard of release" than other involuntary commitment programs. 406 U.S. at 729–30, 92 S.Ct. 1845. Neither situation is present here. *See Hendricks*, 521 U.S. at 359, 117 S.Ct. 2072 ("[T]he term 'mental illness' is devoid of any talismanic significance" under the Due Process Clause.); *Sahhar*, 917 F.2d at 1202 ("[N]ot every disparity between commitment procedures ... amounts to a denial of equal protection.").

### IV

For the foregoing reasons, we hold that Hubbart's claims for federal habeas corpus relief are meritless, but not moot. The district court's denial of Hubbart's habeas petition is AFFIRMED.