**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RONALD WAYNE TAYLOR,
            *Petitioner-Appellant*,

v.

SAN DIEGO COUNTY; ATTORNEY
GENERAL FOR THE STATE OF
CALIFORNIA; AUDREY KING,[*] Acting
Executive Director, Coalinga State
Hospital,
            *Respondents-Appellees*.

No. 12-55030

D.C. No.
3:10-cv-01122-
LAB-PCL

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
November 17, 2014—San Francisco, California

Filed September 9, 2015

---

   [*] Audrey King is substituted for her predecessor pursuant to Fed. R. App. P. 43(c)(2).

Before: Michael Daly Hawkins and Johnnie B. Rawlinson, Circuit Judges, and Barbara M. G. Lynn, District Judge.**

Opinion by Judge Rawlinson

## SUMMARY***

### Habeas Corpus

The panel affirmed the district court's denial of a habeas corpus petition challenging a state-court order committing the petitioner indefinitely for involuntary treatment as a sexually violent predator.

The panel held that the district court did not err in denying a claim that California's Sexually Violent Predator Act violates the Equal Protection Clause because it contains release procedures that are more onerous than those placed on other civilly committed detainees. The panel concluded that individuals committed under California's Lanterman-Petris Short Act were not similarly situated to those committed under the SVPA.

The panel held that, given the absence of established Supreme Court precedent, the district court also did not err in

---

** The Honorable Barbara M. G. Lynn, District Judge for the United States District Court for the Northern District of Texas, sitting by designation.

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

denying a claim that the SVPA violates the Due Process Clause because it contains a burden-shifting scheme requiring the detainee to prove that he is no longer a sexually violent predator in order to terminate his commitment.

## COUNSEL

Kurt David Hermansen, Law Office of Kurt David Hermansen, San Diego, California, for Petitioner-Appellant.

Kamala D. Harris, Attorney General of California, Julie Garland, Senior Assistant Attorney General, Jennifer A. Jadovitz, Deputy Attorney General, Kevin Vienna (argued), Supervising Deputy Attorney General, San Diego, California, for Respondent-Appellee.

## OPINION

RAWLINSON, Circuit Judge:

In this appeal, Ronald Taylor (Taylor) seeks federal habeas corpus relief from a state-court order committing him indefinitely for involuntary treatment as a sexually violent predator, in accordance with California law. Two issues were certified for appeal by a motions panel of this Court. The first issue is whether California's Sexually Violent Predator Act violates the Equal Protection Clause because it contains release procedures that are more onerous than those placed on other civilly committed detainees. The second is whether the statute violates the federal Due Process Clause because it contains a burden-shifting scheme requiring the detainee to

prove that he is no longer a sexually violent predator in order to terminate his commitment.

On habeas review, we affirm the district court's denial of Taylor's habeas petition because the state courts' denial of relief was not contrary to or an unreasonable application of controlling Supreme Court precedent.

## I.  BACKGROUND

Taylor was convicted of committing forcible rape in 1975, 1979, and 1989 against three separate victims.  The state courts determined that Taylor was a sexually violent predator, and in 2005, Taylor was committed to the State Department of Mental Health.

The pre-2006 version of the statute limited civil commitments to two-year terms and only permitted extensions when the state proved beyond a reasonable doubt that the committed person remained a sexually violent predator.  *See* California Welfare and Institutions Code § 6604 (2005).  In late 2006, the statute was substantially changed through the initiative process.  Among other changes, Proposition 83 replaced the two-year civil commitment period with an indefinite term of commitment. *See* California Welfare and Institutions Code (W&I) § 6604 (2006); *see also People v. McKee*, 223 P.3d 566, 569–70 (Cal. 2010).

Post-2006, at the initial hearing, the state is still required to prove beyond a reasonable doubt that the individual meets the statutory definition of sexually violent predator. *See* W&I § 6604; *see also McKee*, 223 P.3d at 569–70.  Additionally, the 2006 amendment requires the Department of State

Hospitals to annually examine the committed person and file a report indicating whether the person still satisfies the definition of a sexually violent predator, or whether a conditional release or unconditional discharge is appropriate. *See id*. § 6604.9(a),(b).

If the Department of Mental Health finds that the person warrants conditional release or unconditional discharge and the state contests that finding, the state must prove beyond a reasonable doubt that the person still meets the definition of a sexually violent predator. *See id*. §§ 6604.9(d)–(f); 6605. However, a committed person may file a petition for conditional release before the court, "with or without the recommendation or concurrence of the Director of State Hospitals. . . . " *Id*. § 6608(a). In that instance, the committed person must prove by a preponderance of the evidence that he no longer meets the statutory definition of a sexually violent predator. *See id*. § 6608(i).

After the statute was amended, the district attorney filed a civil commitment petition pursuant to the amended statute, seeking to recommit Taylor for an indeterminate period. The trial judge found probable cause to believe that the allegations that Taylor continued to meet the definition of a sexually violent predator were true. A jury trial was held to determine whether Taylor actually continued to meet the statutory definition of a sexually violent predator. During trial, psychologists who had evaluated Taylor testified.

### *A. Trial Testimony.*

1.  Dr. Dana Putnam

Dr. Putnam explained that examination of a sexually violent predator includes three prongs:  1) the offense of conviction; 2) the existence of a qualifying mental disorder; and 3) the likelihood that the accused will commit future sexually violent acts due to his mental condition.

Dr. Putnam testified that the sexual offenses committed by Taylor satisfied the first prong of the evaluation criteria.

Dr. Putnam diagnosed Taylor with "paraphilia not otherwise specified relating to non-consenting behavior, non-consenting sexual behavior, with females."[1] He found that Taylor had a clear history of deviant aspects of rape, not found in normative behavior, as evidenced by strangling a fifty-year-old woman before raping her, or placing a pillowcase over a woman's head prior to raping her. He also noted there were "sadistic element[s]" to Taylor's rapes.  In addition, Dr. Putnam diagnosed Taylor with antisocial personality disorder, which aggravated the paraphilia disorder.  Dr. Putnam also noted Taylor's lack of remorse, as he denied raping the victims or blamed them for the harm he caused.  The combination of disorders satisfied the second prong of Dr. Putnam's criteria.

Finally, Dr. Putnam conducted a risk assessment to determine Taylor's likelihood to commit and be convicted of

---

[1] Paraphilia generally involves "intense or current sexual fantasies, urges, or behaviors over a period greater than six months that involve . . . nonconsenting persons. . . ."

another sexual offense. Following the assessment, Dr. Putnam opined "that treatment in the community would not suffice to reduce [Taylor's] risk to the point that he would no longer be likely to commit future sexually violent predatory offenses." Thus, Taylor met all three prongs of Dr. Putnam's criteria for continued civil commitment.

### 2. Dr. John Hupka

Dr. Hupka agreed with Dr. Putnam regarding the appropriate evaluation criteria. He also shared Dr. Putnam's views that Taylor committed qualifying crimes, suffered from paraphilia, a sexual deviance, and from an antisocial personality disorder. Dr. Hupka joined Dr. Putnam in predicting that Taylor would likely engage in sexually violent predatory behavior if released.

The jury returned a verdict finding that Taylor continued to meet the criteria to be civilly committed as a sexually violent predator, and Taylor was committed to the State Department of Mental Health for an indeterminate term.

### B. State Court Decisions

Among other arguments made before the California Court of Appeal, Taylor asserted that the civil commitment statute violated state and federal due process by placing the burden of proof on him to establish eligibility for conditional release and violated his state and federal right to equal protection, as sexually violent predators are treated differently than other civilly committed offenders. The Court of Appeal rejected Taylor's due process and equal protection claims.

After the California Supreme Court declined discretionary review, Taylor filed a habeas petition in federal court.

## C. Federal Court Decision

Relying on *Jones v. United States*, 463 U.S. 354, 356–57 (1983) and the state court's findings, the magistrate judge recommended denial of Taylor's due process challenge to the portion of the statute assigning the burden of proof to the petitioner to establish that he no longer qualified as a sexually violent predator. The magistrate judge noted the absence of clearly established federal law prohibiting California from assigning Taylor the burden of proof. Therefore, the magistrate judge found that the state court did not unreasonably apply clearly established federal law.

Citing *Addington v. Texas*, 441 U.S. 418, 431 (1979), the magistrate judge noted that to decide Taylor's equal protection claim, the appropriate inquiry is whether state law treated all similarly situated detainees the same. The magistrate judge mentioned the state appellate court's reliance on *Hubbart v. Knapp*, 379 F.3d 773, 781–82 (9th Cir. 2004). In *Hubbart*, this court determined that the state court reasonably found that sexually violent predators were not denied equal protection when compared to other civilly committed offenders. *See Hubbart*, 379 F.3d at 782. The *Hubbart* panel recognized the distinction between sexually violent predators and mentally disordered offenders, and discerned no conflict with clearly established federal law. *See id.* Further, the *Hubbart* panel determined that even if sexually violent predators were similarly situated to other civilly committed offenders, the sexually violent predator statute was narrowly tailored to further the state's compelling interest in containing sexually violent predators. *See id*. at

781–82. The magistrate judge ultimately determined that the state court decision was not contrary to or an unreasonable application of clearly established federal law. The district court adopted the magistrate judge's findings in their entirety.

This court subsequently granted a certificate of appealability as to the following issues: "1) whether California's SVPA violates the Equal Protection Clause; and 2) whether the SVPA violates the Due Process Clause because it places a burden on the petitioner to prove he is no longer dangerous in order to terminate his detention." (citations omitted).

## II. STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we review the district court's denial of a federal habeas petition *de novo*. *See Hibbler v. Benedetti*, 693 F.3d 1140, 1145–46 (9th Cir. 2012). To prevail, a habeas petitioner must demonstrate that the state court's decision was contrary to or involved an unreasonable application of United States Supreme Court precedent. *See Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). The petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement. . . ." *Id*. at 16 (citation omitted). It is not within a federal habeas court's province "to reexamine state-court determinations on state-law questions. . . ." *Hayes v. Ayers*, 632 F.3d 500, 517 (9th Cir. 2011) (citation omitted). We review the last reasoned decision from the state courts. *See Hibbler*, 693 F.3d at 1146.

## III.   DISCUSSION

### A.  Equal Protection Claim

Taylor submits that the state court's denial of his equal protection claim was contrary to *Baxstrom v. Herold*, 383 U.S. 107 (1966).   Taylor specifically argues that individuals who are committed under the Lanterman-Petris Short (LPS) Act[2] are similarly situated to those committed under the Sexually Violent Predators Act, yet the former are treated more favorably.

Under the LPS Act, an individual may be involuntarily committed for increasingly longer periods, commencing with an initial detention of 72 hours for evaluation and treatment of a person who is a danger to himself or others or gravely disabled.  *See In re Smith*, 178 P.3d 446, 456 (2008).  The initial commitment may be extended for 14 days of extensive treatment and an additional 14 days if the individual is suicidal.  *See id*.  An additional 30-day confinement is available if further intensive treatment is indicated.  *See id*. An individual who is determined to be "imminently dangerous" may be involuntarily committed for 180 days "beyond the 14-day period." *Id*.  The 180-day commitment requires a showing that an individual:

> as a result of mental disorder or mental defect, presents a demonstrated danger of inflicting substantial physical harm upon others; and must have attempted, inflicted, or made a serious threat of substantial physical harm

---

[2] The Lanterman-Petris Short Act is codified at California Welfare & Institutions Code § 5000, *et seq*.

upon another . . . that . . . resulted in his being taken into custody, or must have expressed a serious threat of substantial physical harm upon another within seven days of being taken into custody and that threat . . . resulted in his being taken into custody.

*Id*. (citations and internal quotation marks omitted).

Renewable one-year "conservatorships" are provided for in the LPS Act if an individual is "found to be gravely disabled either by being manifestly unable to take care of oneself or being in custody on a criminal charge and found incompetent to stand trial and having a mental disorder causing one to be dangerous to others." *Id*. (citations omitted).

Because those committed under the LPS are subject to one-year renewable periods of detention, rather than the indeterminate detention available under the Sexually Violent Predators Act, Taylor asserts an equal protection claim.

The state counters that the California Supreme Court has affirmed that those detained pursuant to the LPS Act are not similarly situated to sexually violent predators. *See McKee*, 223 P.3d at 580–81; *see also Litmon v. Harris*, 768 F.3d 1237, 1243 (9th Cir. 2014) (concluding that mentally disordered offenders and mentally disordered sex offenders are not similarly situated to sexually violent predators). The state maintains that LPS Act detainees do not pose the same special dangers as sexually violent predators; that sexually violent predators have not demonstrated the capacity to avoid future felonious conduct; and that LPS Act detainees are

gravely disabled and unable to care for themselves, or "so impaired as to be incompetent to stand trial . . ."

The state's argument is more compelling. When conducting an equal protection analysis, we first identify the groups being compared. "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. . . ." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (citation omitted). While the group members may differ in some respects, they must be similar in the respects pertinent to the State's policy. *See id*.

Although both sexually violent predators and LPS Act detainees are civilly detained, that is where the similarity ends in respect to California's policy concerns. California has enacted a detailed statutory scheme distinguishing the two classifications of mentally ill individuals. *Cf.* W&I § 6600(a)–(h)[3]; W&I § 5008 (defining the prospective committed individual as suffering from a "mental health disorder").

Taylor's reliance on *Baxstrom* is misplaced. *Baxstrom* involved a statutory scheme in which mentally ill prisoners were transferred to civil commitment upon the expiration of their sentences without a jury trial to demonstrate whether confinement was still warranted. *See Baxstrom*, 383 U.S. at

---

[3] *See, e.g.*, W&I § 6600(a)(1): "Sexually violent predator means a person who has been convicted of a sexually violent offense against one or more victims *and* who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (internal quotation marks omitted) (emphasis added).

111–13.  All other mentally ill individuals were afforded a jury trial "of the question of their sanity." *Id.* at 111.  The Supreme Court held that, having made a jury trial available on the issue of sanity, the state could not arbitrarily withhold a jury trial from some mentally ill persons.  There was no basis for distinguishing mentally ill persons nearing the end of a prison term from other mentally ill persons in terms of "the opportunity to show whether a person is mentally ill at all." *Id.*  This reasoning is inapplicable to Taylor's situation.  Under California's statutory scheme, Taylor had the same opportunity as all other civilly committed persons to challenge the petition seeking his commitment.  *See* W&I § 6604.

Taylor's reliance on *Jackson v. Indiana*, 406 U.S. 715 (1972) is similarly unavailing.  In *Jackson*, the petitioner demonstrated mental defectiveness and had *pending* criminal charges filed against him when the trial court civilly committed him until he was certified as sane.  *See* 406 U.S. at 717–19.  Given Jackson's condition and the dim prognosis from the two treating psychologists, he was unlikely to ever be deemed competent to stand trial.  *See id*. at 718–19.  Under these circumstances,  the Supreme Court determined that "subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release" under other statutory provisions violated the Equal Protection Clause.  *Id*. at 730.

Unlike the facts in *Jackson*, the Sexually Violent Predator Act does not create a capricious custody scheme in violation

of equal protection tenets. Sexually violent predators are only designated as such after:  1) two psychologists and/or psychiatrists evaluate the individual to determine if he has committed a sexually violent crime and otherwise meets the sexually violent predator criteria, including likelihood of re-offending; 2) the state files a petition for civil commitment; 3) there is a probable cause hearing to determine whether the petition allegations are true beyond a reasonable doubt; and 4) a jury renders a verdict finding beyond a reasonable doubt that the accused meets the statutory definition of a sexually violent predator.  *See* W&I §§ 6601(d)–(i); 6603(a).  All of these conditions were met for Taylor.  Most importantly, just as with other civilly committed detainees, Taylor has an opportunity for release.  *See id*. at §§ 6604.9(d)–(f); 6605(a)–(c); *see also* 6608(a)–(k).

California's expressed legislative policy is to protect the public from the increased danger posed by sexually violent predators.  *See Litmon*, 768 F.3d at 1242.  Considering this policy, both we and the state of California have recognized that sexually violent predators are not similarly situated to other civilly committed individuals.  *See id.* at 1243; *see also McKee*, 223 P.3d at 581 (noting that "those who are reasonably determined to represent a greater danger may be treated differently").

We are not persuaded by Taylor's attempt to distinguish *Hubbart* because that case involved a pre-Proposition 83 version of the Sexually Violent Predator Act.  Both the former and current versions of the statute contain virtually identical definitions of a sexually violent predator and both versions aim to identify, treat and detain those individuals identified under the statute.  *See* W&I § 6600(a)(1) (2005); *see also* W&I §§ 6600(a)(1) (2006).  Therefore, our ruling in

*Hubbart* remains the law of the circuit. *See United States v. Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012). In any event, we have made the same ruling post-Proposition 83. *See Litmon*, 768 F.3d at 1243 (holding that sexually violent predators are not similarly situated to other civil detainees).

Taylor also suggests that we should employ the more expansive California equal protection analysis. But we are not bound by state law when deciding an issue raised under the United States Constitution. *See Slovik v. Yates*, 556 F.3d 747, 753 n.6 (9th Cir. 2009).

In sum, the California Court of Appeal did not unreasonably apply clearly established federal law to Taylor's equal protection claim by determining that sexually violent predators are not similarly situated to other civilly committed offenders. *See Seeboth v. Allenby*, 789 F.3d 1099, 1105–06 (9th Cir. 2015) (so holding and similarly rejecting petitioner's reliance on *Baxstrom*).

## B.  Due Process Claim

Taylor contends that the California Court of Appeal decision rested on an unreasonable application of *Addington* and *Jones*. He submits that "*Jones* expressly did *not* approve release proceedings that shifted the burden to the committed individual . . ." He further contends that under *Addington*, 441 U.S. at 432–33, the Due Process Clause compels a showing by the state through clear and convincing evidence that the committed individual is both mentally ill and dangerous. Specifically, Taylor posits that the Sexually Violent Predator Act impermissibly shifts the burden of proof, requiring a committed sexually violent predator to

prove by a preponderance of the evidence that he no longer meets the statutory definition of a sexual predator.

The state counters that Taylor's due process challenge must fail because no Supreme Court precedent prohibited amendments to the Sexually Violent Predator Act to change the burden to the detainee to establish the right to release.

Due process is a flexible standard requiring such "procedural protections as the particular situation demands[.]" *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (citation omitted). The California Court of Appeal determined that in *Jones*, the United States Supreme Court "implicitly approved a review procedure similar to the one" used in Taylor's proceedings. The Court of Appeal noted that the *Jones* statutory scheme provided several alternatives for the detainee to seek release. As in the Sexually Violent Predator Act, under the procedure at issue in *Jones*, the detainee was entitled to a judicial hearing to determine eligibility for release, where he was required to prove by a preponderance of the evidence that he was no longer mentally ill or dangerous. In the alternative, he could obtain a certificate of recovery from the requisite state agency. *See Jones*, 463 U.S. at 356–57. The presence of these procedural safeguards persuaded the Supreme Court that the statutory scheme was constitutionally permissible. In similar fashion, and as described, the Sexually Violent Predator Act also provides several mechanisms through which a petitioner may terminate his indefinite term of confinement. Contrary to Taylor's argument, the California Court of Appeal reasonably relied on the Supreme Court's rationale in *Jones* as clearly established federal law.

*Addington* is not clearly established federal law on the issue of re-commitment procedures because *Addington* addressed only the state's burden of proof for *initial* commitment. *See* 441 U.S. at 432–33. Therefore, it cannot be fairly said that the holding in *Addington* approving a clear and convincing standard of proof as constitutionally permissible applies in the context of a re-commitment. Taylor urges us to extend the holding of *Addington* to the re-commitment process. However, the Supreme Court has recently clarified that a state court is not required to extend the holding of a Supreme Court case to avoid unreasonably applying federal law. *See White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

*Foucha v. Louisiana*, 504 U.S. 71 (1992), does not constitute clearly established law either. In *Foucha*, the defendant was insane and dangerous at the time of his conviction; he was found not guilty by reason of insanity. *See id*. at 74, 76. However, the defendant was not mentally ill at the time of his commitment. *See id*. at 78. The Supreme Court determined that the Louisiana statute failed to provide fair and reasonable procedures because Foucha's continued confinement was on the basis of dangerousness alone. *See id*. at 85–86. To pass constitutional muster, a civil confinement statute must commit an offender based on a finding of dangerousness *and* of a present mental illness. *See id*. at 86.

Unlike in *Foucha*, Taylor was not confined based solely on a finding of dangerousness. Moreover, as noted above, fair and reasonable procedures and safeguards exist to ensure that a sexually violent predator is confined only as long as the person is mentally ill *and* dangerous. *See* W&I § 6600(a)(1).

Importantly, the Supreme Court has not definitively addressed the constitutionality of release procedures that place the burden of proof upon the individual challenging continued commitment. *Cf. Addington*, 441 U.S. at 432–33 (addressing initial commitment procedures). In this circumstance, where there is no clearly established federal law, the state court decision cannot be deemed unreasonable. *See Glebe v. Frost*, 135 S. Ct. 429, 431 (2014).

Finally, neither *Addington*, *Jones*, nor *Foucha* were decided under the AEDPA standard. Accordingly, they offer no guidance for habeas review under the AEDPA. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1410–11 (2011); *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As with his equal protection claim, we conclude that the state court's denial of Taylor's due process claim was not contrary to or an unreasonable application of clearly established federal law.

## IV.    CONCLUSION

Sexually violent predators are in a special category of civilly committed offenders because they have a demonstrated sexually violent criminal history and are mentally ill, thereby portending the likelihood of future sexually violent behavior. Given the nature of the harm they represent to themselves and the community, the state has an elevated interest in ensuring that they are identified, treated, and detained for as long as they meet the sexually violent predator criteria. Because sexually violent predators are not similarly situated to other categories of mentally impaired detainees, the California Court of Appeal's denial of Taylor's equal protection claim was not contrary to or an unreasonable application of federal law.

Given the absence of established Supreme Court precedent regarding the constitutionality of release procedures that place the burden of proof upon the individual challenging continued commitment, the California Court of Appeal could not and did not unreasonably apply federal law in denying Taylor's due process claim.

**AFFIRMED**.