**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VASHON TYRONE JACKSON,
              *Petitioner-Appellant,*

v.

CA DEPT. OF MENTAL HEALTH;
JOHN DEMORALES, Executive
Director; CALIFORNIA ATTORNEY
GENERAL,

              *Respondents-Appellees.*

No. 03-17068

D.C. No.
CV-00-00274-
LKK/PAN

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
August 13, 2004—San Francisco, California

Filed February 28, 2005
Amended June 8, 2005

Before: Harry Pregerson and Alex Kozinski, Circuit Judges,
and John S. Rhoades, Sr.,* District Judge.

Opinion by Judge Kozinski

*The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

David M. Porter, Assistant Federal Defender, Sacramento, California, for the petitioner-appellant.

Craig S. Meyers, Deputy Attorney General, Sacramento, California, for the respondents-appellees.

## ORDER

The motion for an extension of time in which to file a petition for rehearing is GRANTED. The petition for rehearing and for rehearing en banc, received March 29, 2005, is ordered filed.

The opinion filed February 28, 2005, slip op. at 2251, is amended as follows:

Slip op. at 2261, Lines 6-8:

> Delete "the state did not petition to commit him for a second two-year term;"

Slip op. at 2261, Line 14:

> Replace "have asked" with "have been successful in asking"

Slip op. at 2264, Lines 4-9:

> Replace "Because Jackson did not demonstrate that he had standing to challenge the state court's jurisdiction to order his confinement, the district court lacked jurisdiction to consider his habeas petition. The judgment of the district court is vacated, and the case is remanded with instructions that the petition be dismissed."
>
> with
>
> "Because Jackson did not demonstrate that he had standing to challenge the state court's jurisdiction to order his confinement, the district court lacked jurisdiction to consider his habeas petition. However, Jackson's failure to allege facts to support his standing may well have resulted from the fact that respondents did not contest standing in the district court. In view of Jackson's claims on appeal regarding the circumstances of his voluntary confinement, *see* note 6 *supra*, and without deciding whether such claims are sufficient to support standing, we remand for the district court to determine, after permitting the parties to address the issue, whether Jackson has standing to bring this challenge. *See United Union of Roofers No. 40* v. *Ins. Corp. of Am.*, 919 F.2d 1398, 1402-03 (9th Cir. 1990); *City of Kenosha* v. *Bruno*, 412 U.S. 507, 514 (1973)."

The petition for rehearing is otherwise DENIED. *See* Fed. R. App. P. 40. The petition for rehearing en banc is DENIED. *See* Fed. R. App. P. 35. No further petitions for rehearing or rehearing en banc will be accepted. The mandate shall issue forthwith.

## OPINION

KOZINSKI, Circuit Judge:

Petitioner Jackson challenges California's jurisdiction to confine him under its Sexually Violent Predator Act (SVPA). Before he filed his federal habeas petition, his SVPA confinement term expired, and he voluntarily recommitted himself. We consider whether he had standing to bring this challenge.

## I

California's SVPA, *see* Cal. Welf. & Inst. Code § 6600 *et seq.*, allows the state to confine particularly dangerous individuals who have been convicted of multiple sexual offenses. In order to confine a person under the SVPA, the state must petition a state court to commit him, *see id.* § 6601(i), and the court (or a jury, if either party so requests) must determine that he is a "sexually violent predator," *see id.* § 6604.[1] An SVPA petition may be filed only if the person named in the petition is "in custody . . . at the time the petition is filed." *Id.* § 6601(a)(2).

The SVPA took effect on January 1, 1996, when Jackson was in prison for a parole violation. At the time, his release was scheduled for February 25, 1996. Because Jackson had multiple rape convictions, state officials began considering him for confinement under the SVPA. The state Board of Prison Terms (BPT), perhaps concerned that it would not be able to satisfy the prerequisites for filing an SVPA petition before Jackson's scheduled release, placed a three-day hold

---

[1]The SVPA defines "sexually violent predator" as "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1).

on his release. According to Jackson, this hold was not authorized by state law.[2]

On February 27, the day before Jackson's new release date and two days after his original one, the BPT determined that there was probable cause that he was a sexually violent predator. It therefore placed a 45-day hold on his release pursuant to Cal. Code Regs. tit. 15, § 2600.1. While this second hold was in force, the Sacramento County District Attorney filed a petition to commit Jackson under the SVPA. A jury determined that Jackson was a sexually violent predator, and he was ordered committed for two years at Atascadero State Hospital (ASH).

While his direct appeal was pending, Jackson filed a state habeas petition. He argued that the three-day hold on his release was illegal, *see* note 2 *supra*, and that the state was required to release him on February 25 under California's "mandatory kick-out" rule, *see* Cal. Pen. Code § 3000(a)(4) (1996) ("[A]t the end of the maximum statutory period of parole . . . the inmate shall be discharged from custody."). Thus, Jackson claimed, he was not lawfully in custody when the SVPA petition was filed. Reading the SVPA's requirement that the person named in the petition be "in custody" as referring only to *lawful* custody, Jackson contended that the state court did not have jurisdiction to order him confined. *See* Cal. Welf. & Inst. Code § 6601(a)(2). The California Court of Appeal summarily denied his habeas petition, and the California Supreme Court denied a subsequent petition.

---

[2]To justify the hold, the state relied on Cal. Pen. Code § 3056, which provides that "[p]risoners on parole . . . shall be subject at any time to be taken back within the inclosure of the prison." Jackson argues that this provision was inapplicable to him, because he had already been "taken back within the inclosure of the prison" for a parole violation. The state responds that the hold was also proper under Cal. Code Regs. tit. 15, § 2600.1(b), which allows the BPT to "order imposition of a temporary hold on [a] . . . parolee in revoked status for up to three (3) working days pending a probable cause hearing by the board." Given our disposition of the case, we need not decide whether the hold was valid.

Jackson then petitioned for federal habeas relief. The district court denied the petition on the ground that it could not grant a habeas petition that claimed only that a state court lacked jurisdiction under state law. Jackson appeals.

## II

The state court ordered Jackson confined for two years. When his term expired in 1999, Jackson voluntarily recommitted himself for an additional two-year period. After his voluntary recommitment, Jackson filed the habeas petition at issue here in February 2000. Before we may consider the merits of Jackson's petition, we must decide whether it presents a case or controversy under Article III of the Constitution. *See Allen* v. *Wright*, 468 U.S. 737, 750 (1984).

**[1]** Article III imposes two important limitations on the type of interest that a litigant must have for a federal court to adjudicate his case. First, Jackson must have had standing to bring his claim. In other words, Jackson must have suffered (1) an "injury in fact" that is (2) "fairly traceable" to the state court's commitment order that he challenges, and (3) that is "likely [to be] redressed by a favorable decision." *See Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Second, after the case is filed, Jackson must maintain a continuing interest in it to keep the case from becoming moot. *Id.* at 191-92.

In *Hubbart* v. *Knapp*, 379 F.3d 773, 777-78 (9th Cir. 2004), decided the day we heard argument in Jackson's case, we considered this latter requirement in a challenge to confinement under the SVPA. Like Jackson, Hubbart argued that his confinement was unlawful because he had not legally been in custody at the time the SVPA petition was filed.

Hubbart had petitioned for habeas during his initial SVPA confinement, but, by the time the case reached us on appeal, his term had ended. *Id.* at 777. However, Hubbart had not

been released after his term expired. Although SVPA confinements last only two years, the state may petition for an additional two-year confinement period. As the second period ends, the state may seek a third, and so forth. This is what happened with Hubbart: When his initial SVPA term expired, the state successfully petitioned to commit him for a second two-year term. *Id.* at 777 n.1.

Each two-year confinement term is based on a distinct proceeding, *see Burris* v. *Hunter*, 290 F. Supp. 2d 1097, 1101 (C.D. Cal. 2003); *see also Butler* v. *Superior Court*, 93 Cal. Rptr. 2d 468, 473-74 (Ct. App. 2000), which requires a fresh determination of the confinee's mental health and a new finding that he is a sexually violent predator, *see* Cal. Welf. & Inst. Code § 6605(d). The state therefore argued that Hubbart's case was moot: He had challenged only the state's jurisdiction to order his initial confinement, which had already expired, so he no longer had any interest in remedying the order.

We nevertheless held that we had jurisdiction to consider Hubbart's case because it fell into an exception to mootness for cases that are "capable of repetition, yet evading review." *Hubbart*, 379 F.3d at 777. The harm Hubbart alleged was capable of repetition because he had already been subject to a second commitment proceeding, and a third petition to commit him was pending when we decided the case. Further, the harm evaded review, as Hubbart's two-year term was so short that he could not pursue his claim through the federal appellate process before the term expired.

Relying on *Hubbart*, Jackson argues that we have jurisdiction to consider his habeas petition even though his initial term of commitment has expired. But *Hubbart* does not apply here. Hubbart's initial SVPA term expired two weeks *after* he petitioned the district court for habeas relief. *See* 379 F.3d at 777. Thus, he clearly had standing to bring the case; at the time he filed his habeas petition, he was confined under an

order he claimed the state lacked jurisdiction to enter. *Cf. Spencer*, 523 U.S. at 7 ("[T]he incarceration . . . constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."). The issue we addressed in *Hubbart* was mootness—whether, after the case had been brought, something happened to cause Hubbart to lose his continuing interest in the case.

Here, by contrast, Jackson's initial SVPA term expired *before* he brought his federal habeas petition. When the district court first considered his case, Jackson was no longer confined under the order he claims the state lacked jurisdiction to enter. The relevant question is not whether Jackson's challenge became moot at some point, but whether he had standing when he brought it.

**[2]** Standing and mootness are similar doctrines: Both require some sort of interest in the case, and both go to whether there is a case or controversy under Article III. Yet, the doctrines have important differences. "Standing doctrine functions to ensure . . . that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth*, 528 U.S. at 191. Mootness issues arise later in the case, when the federal courts are already involved and resources have already been devoted to the dispute. *See id.* at 191-92. The Supreme Court has therefore been willing to recognize exceptions to mootness that do not apply to standing. Most important among these is the exception we applied in *Hubbart* for cases that are capable of repetition, yet evading review. This exception is not applicable to the standing question we address here: "[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." *Id.* at 191. Accordingly, we must determine whether Jackson had standing to raise his claim in the first place.[3]

---

[3]We do not decide whether, if the issue here were mootness, *Hubbart* would control even though Jackson voluntarily committed himself.

### III

**[3]** Jackson argues that the state court lacked jurisdiction under the SVPA to commit him. But he clearly could not rely on his expired SVPA term for standing to raise this claim. Even if the district court were to agree with him that the state court lacked jurisdiction, it could not remedy an expired commitment term.

**[4]** Jackson may nonetheless have had standing if the state court's SVPA commitment order still carried with it "some concrete and continuing injury other than the now-ended incarceration." *Spencer*, 523 U.S. at 7. The Supreme Court has applied this doctrine in its mootness cases, recognizing that collateral consequences may be "adequate to meet Article III's injury-in-fact requirement" to avoid mootness. *Id.* at 14. For instance, some disabilities that a defendant suffers because of his conviction are sufficient to keep his appeal of the conviction from becoming moot, even if his sentence expires during the appeal. *See North Carolina* v. *Rice*, 404 U.S. 244, 247 (1971) (per curiam). There is no conceptual reason why the collateral consequences doctrine should not extend to standing in a case like Jackson's. Continuing effects of Jackson's commitment may be significant enough to satisfy the injury in fact requirement for standing, and a decision invalidating the state court's order would remedy those continuing effects.

But Jackson must demonstrate that such consequences exist.[4]

---

[4]In its mootness cases, the Supreme Court has been willing to presume that a criminal conviction gives rise to collateral consequences. *See Spencer*, 523 U.S. at 8. However, the Court has noted that presuming collateral consequences is difficult to square with the rule that the party seeking the exercise of jurisdiction has the burden of showing that jurisdiction is proper, as well as the rule that the basis for standing must appear in the record. *See id.* at 10-11 (quoting *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990)). The Court therefore cabined the presumption of collateral

The SVPA itself does not provide any statutory disabilities akin to those arising out of a criminal conviction, such as restrictions on owning a firearm or voting. *Cf. Rice*, 404 U.S. at 247 n.1 (examples of disabilities). Nor are we aware of any other statutes that impose such disabilities on former SVPA confinees.

[5] There are, however, other injuries that Jackson suffers or has suffered that might be consequences of the state court's determination that he is a sexually violent predator: (1) the voluntary confinement term he was serving when he filed his habeas petition; (2) the possibility that he will be involuntarily confined in the future; and (3) the reputational harm associated with the SVPA determination. We consider each of these in turn.

*Current Voluntary Confinement*

When Jackson's initial SVPA term expired in 1999, he voluntarily recommitted himself. As a result, Jackson was still confined at ASH when he filed his habeas petition.[5] But while his confinement was clearly an injury in fact, it is hardly clear that it was "fairly traceable to the challenged action" of the state. *Friends of the Earth*, 528 U.S. at 180.

---

consequences to criminal cases, emphasizing that, in such cases, "the presumption . . . is likely to comport with reality." *Id.* at 12.

Jackson was civilly confined under the SVPA, not pursuant to a criminal conviction. *See, e.g.*, *People* v. *Calhoun*, 13 Cal. Rptr. 3d 166, 169-170 (Ct. App. 2004); *see also Hubbart*, 379 F.3d at 777, 780. We are aware of no adverse legal consequences that the confinement entails, *see* page 10 *infra*, and it is certainly not an "obvious fact of life" that such consequences exist, *see Sibron* v. *New York*, 392 U.S. 40, 55 (1968). Mindful of the Supreme Court's cautions about presuming the basis for jurisdiction, we decline to presume that Jackson has suffered or will suffer collateral consequences from his SVPA commitment.

[5]Jackson remains committed at ASH. After he filed his federal habeas petition, Jackson voluntarily recommitted himself twice more—in 2001 and 2003.

It is possible that Jackson committed himself because the state would otherwise have been successful in asking a court to recommit him involuntarily. If he stood little chance of defeating such a request, but would incur some hardship in trying, perhaps we would be willing to say that his decision to voluntarily recommit himself was traceable to the state court's initial decision to confine him. However, that is not the only possible explanation for Jackson's decision to recommit himself, and it is not our duty to hypothesize circumstances under which jurisdiction might have been proper. Instead, it was Jackson's burden, as the "party who [sought] the exercise of jurisdiction in his favor," *McNutt* v. *Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936), "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," *Warth* v. *Seldin*, 422 U.S. 490, 518 (1975); *see also FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990).

[6] Jackson's pleadings below did not explain why he decided to voluntarily recommit himself. His habeas petition listed his first voluntary confinement term as a *future* sentence, even though he was currently serving it, and indicated only that he "waived his second trial" under the SVPA. Jackson's memorandum in support of his habeas petition did not mention any events that occurred after the state court ordered him confined. And his supplemental memorandum in support of the habeas petition ignored the difference between his initial, involuntary SVPA term and his voluntary confinement, claiming that a "string of administrative and judicial proceedings" resulted in Jackson's incarceration at ASH, "where he remains confined today." No other part of the record before the district court contained an explanation of Jackson's decision to recommit himself.[6] There is therefore no basis other

---

[6]Nor, for that matter, does the record before us reveal any additional information that would support Jackson's standing. At oral argument, Jackson's counsel claimed that Jackson committed himself because he believed challenging a second SVPA petition would have been futile and

than speculation for saying that Jackson's decision was fairly traceable to the state court's order confining him under the SVPA.

*Possibility of Future Confinement*

Another possibility is that Jackson had standing because he might in the future be confined involuntarily. If Jackson had never voluntarily recommitted himself, but had instead been committed under successive SVPA petitions, his initial SVPA confinement would have served as a prerequisite for a second petition, the second petition as a prerequisite for a third, and so forth. Thus, any future petition to recommit him could be traced back, through preceding petitions, to his initial confinement.

**[7]** But Jackson's case does not involve such a chain. If the state petitions to recommit him, the prerequisite for the petition would be his current voluntary confinement. Since we cannot say that this current confinement is traceable to the state court's SVPA confinement order, we likewise cannot trace any future confinement petitions back to the order.

*Reputational Harm*

**[8]** Finally, we have little doubt that Jackson's adjudication as a sexually violent predator carries with it consequences to his reputation. Although it is not clear how much of the harm is attributable to the SVPA designation as such—as opposed to the sexual crime convictions that provided the basis for the designation—the designation itself is an injury. Moreover,

---

that he would be transferred to jail—where he did not want to go—while an involuntary petition was pending. There is no support in the record for either belief. And even though we asked counsel to submit supplemental briefs addressing jurisdiction, Jackson made no effort to explain the circumstances of his voluntary confinement, let alone an offer to expand the record with evidence to support the assertions at oral argument.

some of this harm could be remedied by a judgment that the state court lacked jurisdiction under the SVPA. But not all injuries amount to injuries in fact that can support standing.

[9] The Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness. *See Spencer*, 523 U.S. at 16 n.8 ("We have obviously not regarded [an interest in vindicating reputation] as sufficient [to avoid mootness] in the past—even when the finding was not that of a parole board, but the much more solemn condemnation of a full-dress criminal conviction."). Any interest that would not be enough to keep the case from becoming moot is necessarily insufficient to confer standing.[7] Otherwise, the case would immediately be moot. Thus, Jackson did not have standing to challenge the state court's jurisdiction in order to vindicate his reputation.

\*          \*          \*

[10] Because Jackson did not demonstrate that he had standing to challenge the state court's jurisdiction to order his confinement, the district court lacked jurisdiction to consider his habeas petition. However, Jackson's failure to allege facts to support his standing may well have resulted from the fact that respondents did not contest standing in the district court. In view of Jackson's claims on appeal regarding the circumstances of his voluntary confinement, *see* note 6 *supra*, and without deciding whether such claims are sufficient to support standing, we remand for the district court to determine, after permitting the parties to address the issue, whether Jackson

---

[7]The converse is not necessarily true. Because of the Court's concerns about the litigation costs incurred by the time mootness becomes an issue, *see* page 8 *supra*, an interest may be sufficient to keep the case from becoming moot even if it could not have supported standing to bring the case in federal court. *Cf. Friends of the Earth*, 528 U.S. at 190 ("[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

has standing to bring this challenge. *See United Union of Roofers No. 40* v. *Ins. Corp. of Am.*, 919 F.2d 1398, 1402-03 (9th Cir. 1990); *City of Kenosha* v. *Bruno*, 412 U.S. 507, 514 (1973).

**VACATED AND REMANDED.**