**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL HUFTILE,
      *Plaintiff-Appellant,*

v.

L C MICCIO-FONSECA,
      *Defendant-Appellee.*

No. 03-16734

D.C. No.
CV-03-01522-FCD/
DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
December 10, 2004—San Francisco, California

Filed June 10, 2005

Before: Alex Kozinski, William A. Fletcher, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge William A. Fletcher

6789

**COUNSEL**

Michael Huftile, Pro Se, San Luis Obispo, California, Melissa A. Jones, J. Michael Stusiak, Morrison & Foerster, Sacramento, California, for the plaintiff-appellant.

Margarita Altamirano, Office of the California Attorney General, Sacramento, California, for the defendant-appellee and for amicus California Department of Mental Health.

---

**OPINION**

W. FLETCHER, Circuit Judge:

In this case, we must decide a question of first impression: Does the favorable termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), apply to civil commitments under California's Sexually Violent Predators Act? We conclude that the *Heck* rule applies. We therefore affirm the district court's dismissal of Huftile's § 1983 action for damages and declaratory relief. However, we reverse the dismissal of his claim for prospective injunctive relief under *Heck*, and remand for further proceedings concerning this form of relief.

## I.　Background

Michael Huftile filed a 42 U.S.C. § 1983 complaint seeking damages, declaratory relief, and injunctive relief against Dr. L.C. Miccio-Fonseca in federal district court on July 17, 2003. When he filed the complaint, Huftile was being detained under California's Sexually Violent Predators Act ("SVPA"). The SVPA provides for a two-year term of civil commitment if a court or jury determines beyond a reasonable doubt that an individual is a "sexually violent predator." Cal. Welf. & Inst. Code § 6604. Huftile contends that Dr. Miccio-Fonseca's "policies, practices, and customs" in performing an SVPA evaluation of him violated his constitutional rights to due process, privacy, and equal protection.

The events underlying Huftile's complaint occurred when Huftile was incarcerated at California Men's Colony in San Luis Obispo. According to Huftile's complaint, Dr. Miccio-

Fonseca met with him on February 2, 2001, to initiate an SVPA evaluation. Dr. Miccio-Fonseca presented Huftile with a "Notice of Evaluation as a Sexually Violent Predator." Huftile signed the form to indicate that he refused to be interviewed by Dr. Miccio-Fonseca. Huftile alleges that he understood that this refusal would bar Dr. Miccio-Fonseca from reviewing his confidential records. According to the complaint, Dr. Miccio-Fonseca again attempted to interview Huftile on July 3, 2002. Huftile alleges that Dr. Miccio-Fonseca informed him that he was under a court order requiring him to speak with her. He further alleges that Dr. Miccio-Fonseca could not produce a copy of the court order and did not tape the interview as required in the order.

According to Huftile's complaint, Dr. Miccio-Fonseca prepared a report and later testified against Huftile at the SVPA civil commitment trial. Huftile alleges that because he did not consent to be interviewed, Dr. Miccio-Fonseca's evaluation was based solely on Huftile's record, including Huftile's California Department of Corrections Central File. Huftile further alleges that Dr. Miccio-Fonseca accessed his confidential records without his consent, failed to follow proper procedures in conducting interviews, fabricated portions of her report, and relied on stale data in preparing the report.

Huftile requested leave to proceed in forma pauperis in the district court pursuant to 28 U.S.C. § 1915. The magistrate judge granted in forma pauperis status and recommended that Huftile's action be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). The magistrate judge concluded that *Heck v. Humphrey* barred Huftile's suit because he challenged the validity of a mental health assessment underlying his civil commitment, and because that commitment had not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" (quoting *Heck*, 512 U.S. at 487) (internal quotation marks omitted).

The district court adopted the findings and recommendations of the magistrate judge. Huftile timely appealed. We review de novo a dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) in the same manner as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

## II.   Analysis

**[1]** In *Heck v. Humphrey*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. Huftile contends that *Heck*'s favorable termination rule does not bar his action because either (1) *Heck* does not apply to suits brought by civil detainees or (2) his suit does not "necessarily imply" the invalidity of his continuing confinement. Huftile also argues that even if *Heck* would otherwise apply, his subsequent release from Department of Mental Health custody and his concomitant inability to petition for habeas corpus relief allow him to maintain a § 1983 action. We consider these arguments in turn.

## A.   Applicability of *Heck v. Humphrey* to SVPA Detainees

Huftile argues that *Heck*'s references to "a state prisoner" indicate that the favorable termination rule applies only to "prisoners" convicted of criminal offenses. There is some support for this argument. In creating the favorable termination rule in *Heck*, the Court relied on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding *criminal judgments*." *Id.* at 486

(emphasis added). SVPA commitment, by contrast, is a civil proceeding. *See Hubbart v. Superior Court*, 19 Cal. 4th 1138, 1166 (1999) (stating that the SVPA is a "nonpunitive, civil commitment scheme"). Huftile also relies on our decision in *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000), in which we held that an SVPA detainee was not a "prisoner" for the purposes of the exhaustion and financial reporting requirements of the Prison Litigation Reform Act ("PLRA"), *id.* at 1140. The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). In *Page*, we held that the "natural reading" of "prisoner" required that "the individual in question must be currently detained as a result of accusation, conviction, or sentence for a criminal offense." 201 F.3d at 1139.

However, the PLRA definition of "prisoner" does not mark the outer boundary of *Heck*'s favorable termination rule. *Heck* dealt with the "intersection of the two most fertile sources of federal-court prisoner litigation" — the basic federal civil rights statute, 42 U.S.C. § 1983, and the federal habeas corpus statute for state prisoners, 28 U.S.C. § 2254. 512 U.S. at 480. In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court explained that *Heck*'s favorable termination rule "served the practical objective of preserving limitations on the availability of habeas remedies. Federal petitions for habeas corpus may be granted only after other avenues of relief have been exhausted. Prisoners suing under § 1983, in contrast, generally face a substantially lower gate . . . ." *Id.* at 751 (citations omitted). In *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), we noted that the differing exhaustion requirements of § 1983 and § 2254 "left the two statutes on a 'collision course.' " *Id.* at 855 (quoting *Heck*, 512 U.S. at 492 (Souter, J., concurring in the judgment)).

**[2]** *Heck*'s favorable termination rule was intended to prevent a person in custody from using § 1983 to circumvent the

more stringent requirements for habeas corpus. Unlike the PLRA, the habeas statute is not textually limited to "prisoners." Rather, § 2254 directs that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a *person in custody* pursuant to the judgment of a State court." 28 U.S.C. § 2254(a) (emphasis added). It is well established that detainees under an involuntary civil commitment scheme such as SVPA may use a § 2254 habeas petition to challenge a term of confinement. *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies § 2254's "in custody" requirement). We therefore conclude that *Heck* applies to SVPA detainees with access to habeas relief.

### B.   Applicability of *Heck* to Huftile's Suit

Huftile asserts that even if *Heck*'s favorable termination rule applies to SVPA detainees in general, it does not apply to his suit. He contends that his § 1983 suit is cognizable because he is challenging the procedures used to evaluate him under the SVPA, not the substantive merits of his underlying civil commitment. Therefore, he argues, a judgment in his favor would not "necessarily imply the invalidity" of his commitment or confinement.

The Supreme Court has instructed, however, that *Heck* envisioned "the possibility . . . that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Edwards v. Balisok*, 520 U.S. 641, 645 (1997). In *Balisok*, the alleged procedural violations involved a hearing officer's decision, motivated by "deceit and bias," to exclude exculpatory evidence in a disciplinary proceeding. *Id.* at 646-47. The *Balisok* Court reasoned that a "criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Id.* at 647. It therefore concluded that Balisok's § 1983 claim for declaratory relief and money damages neces-

sarily implied the invalidity of the disciplinary action and rendered his claim not cognizable under *Heck*. *Id.* at 648.

**[3]** Huftile's § 1983 claim is factually similar to that in *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997). In *Butterfield*, the prisoner-plaintiff brought a § 1983 suit on the ground that the parole board allegedly relied on false information in his prison file to deny him parole. *Id.* at 1024. We held that *Heck* applied:

> Butterfield alleges that defendants violated his due process rights by considering false information in his prison file to find him ineligible for parole. We have no difficulty in concluding that a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement.

*Id.*

**[4]** In determining whether a judgment in favor of a § 1983 plaintiff necessarily implies the invalidity of his underlying conviction, we take into account the particular facts of the criminal trial or other proceeding leading to the allegedly improper detention. In *Heck*, for example, the Supreme Court stated in a footnote that a challenge to an allegedly unreasonable search "would not *necessarily* imply that the plaintiff's conviction was unlawful" because of doctrines such as independent source, inevitable discovery, and harmless error. 512 U.S. at 487 n.7. In this circuit, we have held that an unreasonable search necessarily implies the invalidity of a conviction where the evidence seized was "an essential element" in "the present case." *Harvey v. Waldron*, 210 F.3d 1008, 1015-16 (9th Cir. 2000).

**[5]** The district court record does not include a transcript of Huftile's civil commitment proceeding. However, the structure of the SVPA statutory scheme indicates that the success

of Huftile's § 1983 claim would necessarily imply the invalidity of his civil commitment. Before the California Director of Mental Health can forward a request for an SVPA commitment petition to the appropriate county, two evaluators must agree that "the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody." Cal. Welf. & Inst. Code § 6601(d). An attorney for that county may then file a petition for commitment. *Id.* § 6601(i). A judge must then review this petition to determine whether there is probable cause to believe that the person "is likely to engage in sexually violent predatory criminal behavior" upon release. *Id.* § 6602(a). Because Dr. Miccio-Fonseca was one of Huftile's evaluators, a judgment in favor of Huftile in his § 1983 action would necessarily imply the invalidity of his civil commitment. That is, if only one evaluator, rather than two, had concluded that Huftile had a "mental disorder" within the meaning of § 6601(d), there would have been no basis for the state Director of Mental Health to send the request to the county, no basis for the county attorney to file a petition for commitment, and no basis for the judge to go forward with a probable cause determination.

**[6]** In addition to seeking monetary damages and declaratory relief, Huftile seeks injunctive relief that would "prevent[ ] Defendant from inflicting further injury" upon him. The Supreme Court stated in *Balisok* that "[o]rdinarily, a prayer for . . . prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983." 520 U.S. at 648. While Huftile's claims for damages and declaratory relief are barred by *Heck*, Huftile's claim for injunctive relief is not barred. We therefore reverse the portion of the district court's order finding a *Heck* bar to injunctive relief. We do not decide whether Huftile is, in fact, entitled to injunctive relief. On remand, the district court will be free, through appropriate procedures, to decide on the propriety of such relief.

## C. Availability of Habeas Corpus Review

[7] In *Spencer v. Kemna*, 523 U.S. 1 (1998), five Justices endorsed the idea that the unavailability of habeas relief permits a § 1983 action, regardless of whether the success of the action would necessarily imply the invalidity of the conviction or sentence.[1] *See also Muhammad*, 540 U.S. at 752 n.2 ("Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement."). Based on the separate opinions in *Spencer*, we have held that in certain limited cases, *Heck* does not bar a § 1983 claim if habeas relief is unavailable. *See Nonnette v. Small*, 316 F.3d 872, 875-77 (9th Cir. 2002). Huftile contended in his opening brief that even if his damages suit would otherwise be barred by *Heck*, his § 1983 action was cognizable because he was no longer civilly committed and hence was unable to file a habeas corpus petition. Huftile is now in recommitment proceedings. We must therefore determine whether habeas relief is available to Huftile under *Heck*, given his current custody status.

Huftile's initial term of civil commitment began on November 19, 2002. After he filed his complaint in this case, Huftile was transferred to the custody of the California Department of Corrections to serve time for a parole violation. We have been informed in a post-argument submission that probable cause for a recommitment trial was found on March 14, 2005, and that a trial has been set for August 23,

---

[1]Justice Souter, writing for four members of the Court in *Spencer*, stated in a concurrence that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." 523 U.S. at 21 (Souter, J., concurring). Justice Stevens, in dissent, noted that "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under 42 U.S.C. § 1983." *Id.* at 25 n.8 (Stevens, J., dissenting).

2005. Huftile is being detained at Atascadero State Hospital pending the civil recommitment trial. Dr. Miccio-Fonseca did not conduct any of the evaluations underlying the state's recommitment petition.

[8] Huftile still has standing to bring a federal habeas petition challenging his initial SVPA commitment even if the term of that commitment has expired. In *Jackson v. California Department of Mental Health*, 399 F.3d 1069 (9th Cir. 2005), we considered the case of an SVPA detainee whose initial term expired before he filed a federal habeas petition. Jackson's standing was in doubt because his continuing confinement was due to his voluntary recommitment after his initial term had expired. We noted, however, that the standing analysis would be different if Jackson had not voluntarily recommitted himself. Had Jackson instead been involuntarily committed under successive SVPA petitions, "any future petition to recommit him could be traced back, through preceding petitions, to his initial confinement" because "his initial SVPA confinement would have served as a prerequisite for a second petition, the second petition as a prerequisite for a third, and so forth." *Id.* This is Huftile's case. Under California's SVPA scheme, the current petition to recommit Huftile is directly traceable to his initial term of confinement and is thereby sufficient to confer standing for federal habeas purposes.

## Conclusion

[9] For the foregoing reasons, we affirm the district court's 28 U.S.C. § 1915(e)(2)(B)(ii) dismissal of Huftile's claim for damages and declaratory relief, but we reverse the dismissal of his claim for injunctive relief, and we remand to allow the district court to address this claim. Because Huftile's § 1983 claim for damages and declaratory relief will not accrue unless and until his civil commitment is invalidated, we also remand to allow the district court to dismiss this claim without prejudice to Huftile's later filing a § 1983 action if his

civil commitment is invalidated. *See Heck*, 512 U.S. at 489-90; *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (per curiam).

AFFIRMED in part; REVERSED in part; REMANDED.