DLD-121                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1855
_____

JOSEPH ARUANNO,
                    Appellant
                v.

SARAH DAVIS, Assistant Superintendent
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-14-cv-03413)
District Judge:  Honorable William J. Martini;
_____


_____

No. 16-1856
_____

JOSEPH ARUANNO,
                    Appellant
                v.

STATE OF NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-14-cv-05099)
District Judge:  Honorable William J. Martini;
_____

_____

No. 16-1857
_____

JOSEPH ARUANNO,
                                        Appellant
                    v.

ADMINISTRATOR S. YATES; ASSISTANT SUPER S. DAVIS;
JOHN/JANE DOES 1-20
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-14-cv-05100)
District Judge:  Honorable William J. Martini

_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
February 2, 2017
Before:  CHAGARES, VANASKIE and KRAUSE, Circuit Judges

(Opinion filed: February 15, 2017)
_____

OPINION[*]
_____

PER CURIAM

Joseph Aruanno appeals pro se from an order entered in each of the three cases

captioned above, denying him the privilege of proceeding in forma pauperis ("IFP").  We

will affirm the District Court's judgments.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

Joseph Aruanno was civilly committed as a sexually violent predator following his conviction in New Jersey for second-degree sexual assault. In the cases here, the District Court entered an order allowing Aruanno to show cause why the Court should not deny his applications to proceed IFP because he had abused the privilege through his frequent litigation. The Court noted that Aruanno had "filed over 39 civil actions" in the District Court "and 45 appeals" in our Court. Dist. Ct. Op. at 2, Dkt. #5.[1]

The District Court described the "three strikes" law that Congress has imposed on prisoners through the Prison Litigation Reform Act ("PLRA"), see 28 U.S.C. § 1915(g),[2] and recognized that those restrictions do not apply to Aruanno, because he does not meet the definition of "prisoner" found in § 1915(h).[3] The Court noted that Aruanno's "detention is not . . . punishment for his criminal conviction but rather a civil commitment for non-punitive purposes." Dist. Ct. Op. at 6, Dkt. #5 (internal quotation

---

[1] Docket numbers in this opinion refer to D. Del. Civ. No. 14-cv-03413; the documents referred to were filed in all three of the above-captioned cases.

[2] That provision states: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

[3] That section provides: "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h).

marks omitted).[4] The Court stated, however, that it had the discretionary authority to deny IFP to someone who had abused the privilege. To guide its exercise of discretion, the Court decided to adopt and apply a PLRA-type limitation to Aruanno's applications to proceed IFP.

Aruanno responded to the show-cause order, see Dkt. #7, arguing that if the Court had granted him relief in previous cases, he would not have had to file more complaints. He also argued that he was in imminent danger from fights or victimization by sexual predators. He argued in general that he had difficulties with legal access, that he was entitled to a legal guardian, and that it would be unfair to restrict his right to file habeas petitions. He also appeared to allege that he was denied a job because he refuses to admit guilt, which means he would not be able to pay any filing fees. Finally, he noted that courts had on occasion billed him for cases, deducting fees from his account, and argued that would be fairer than completely denying him access to the courts.

The District Court entered an order and opinion denying Aruanno's motions to proceed IFP, administratively terminating the actions subject to reopening if Aruanno paid the $400 filing fee for the particular case within 30 days. In the opinion, the District Court found that Aruanno's allegations regarding imminent danger were "vague and too speculative to be considered imminent." Dist. Ct. Op. at 8, Dkt. #9. The Court construed

---

[4] The District Court's conclusion that Aruanno does not meet the PLRA's definition of "prisoner" comports with the holdings of our sister courts that have reached the issue. See Merryfield v. Jordan, 584 F.3d 923, 927 (10th Cir. 2009) (collecting cases from the 4th, 8th, 9th and 11th circuits that so hold).

Aruanno's response as seeking appointment of a guardian, and denied that request. The Court also noted that it would not restrict Aruanno from proceeding IFP in habeas cases. Aruanno timely appealed the decision in each of the three cases (those appeals were docketed here at C.A. Nos. 16-1855, 16-1856, and 16-1857), and the appeals were consolidated.

The in forma pauperis statute, 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts." Neitzke v. Williams, 490 U.S. 319, 324 (1989). The statute ensures that administrative court costs and filing fees do "not prevent indigent persons from pursuing meaningful litigation." Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995). But Congress also recognized that those proceeding IFP do not have the same incentive to "pause before crossing the threshold of the courthouse door." Id. Thus, after granting IFP, the statute provides that the District Court "shall dismiss" the proceeding if, inter alia, the case is frivolous or fails to state a claim upon which relief can be granted. § 1915(e).

We have held that an assessment of merit should generally occur *after* IFP is granted: "[T]he general practice in this Circuit is to grant leave to proceed based solely on a showing of indigence." Gibbs v. Ryan, 160 F.3d 160, 161 n.1 (3d Cir. 1998); Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976). But we have also noted that "extreme circumstances" might justify denying a financially qualified litigant leave to proceed IFP. Deutsch, 67 F.3d at 1084 n.5; Lockhart v. D'Urso, 408 F.2d 354, 355 (3d Cir. 1969) (per

5

curiam). The District Court determined that such extreme circumstances were present here.

In evaluating whether the District Court abused its discretion in denying Aruanno IFP status, see Sinwell, 536 F.2d at 18 (reviewing IFP denial for abuse of discretion), we find it useful to consider the criteria we use to evaluate whether a district court has justifiably imposed a filing injunction against an abusive litigant. See Butler v. Department of Justice, 492 F.3d 440, 443, 445-46 (D.C. Cir. 2007). Before imposing such an injunction, a district court in our circuit must: (1) ensure that there are "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions," (2) allow the litigant "to show cause why the proposed injunctive relief should not issue"; and (3) "narrowly tailor[]" the injunctive order "to fit the particular circumstances of the case before the District Court." Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993).

We hold that the District Court did not abuse its discretion. The District Court reasonably found that Aruanno has a history of abusive filings. As noted, the District Court stated that Aruanno had filed "over 39 civil actions" and "45 appeals," and those numbers have increased since the District Court's writings. Second, the District Court did give Aruanno an opportunity to show cause why he should not be denied the privilege

of proceeding IFP without a showing of imminent danger.[5] And the Court did not rule until it had considered Aruanno's response, which was unpersuasive.

Finally, the District Court's order was sufficiently narrow to meet the extraordinary situation it faced here.[6] Indeed, in the context of IFP restrictions imposed on prisoners, we have upheld the constitutionality of § 1915(g)'s similar filing restrictions, stating, as the District Court noted here, that the statute "does not block a prisoner's access to the federal courts. It only denies the prisoner the privilege of filing before he has acquired the necessary filing fee." Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001) (en banc).

For the foregoing reasons, we will affirm the District Court's judgments.[7]

---

[5] We agree with the District Court that Aruanno's vague allegations of possible victimization or fights do not meet the "imminent danger" standard. Cf., Ball v. Famiglio, 726 F.3d 448, 468 (3d Cir. 2013) (vague and conclusory allegations that medical treatment had been withheld does not constitute "imminent danger.").

[6] Notably, the District Court did not impose any prospective restriction on Aruanno's ability to proceed IFP. Accordingly, we do not address the propriety of any such restriction. See, e.g., In re McDonald, 489 U.S. 180, 184 (1989) (per curiam); Hurt v. Soc. Sec. Admin., 544 F.3d 308, 310 (D.C. Cir. 2008).

[7] Aruanno's motion for appointment of a guardian is denied.