**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3413
_____

JOSEPH ARUANNO,
                            Appellant

v.

JON S. CORZINE, Governor New Jersey;
GEORGE HAYMAN, Commissioner - DOC, et al;
DEVON BROWN, Past Commissioner - DOC, et al;
KEVIN M. RYAN, Commissioner - DHS, et al;
ALAN G. KAUFMAN, Director, Division of Mental Health Services;
JOHN E. MAIN, Chief Executive Officer - DMHS, et al;
WILLIAM F. PLANTIER, Director of Operations, DOC;
GRACE ROGERS, Administrators - ADTC & STUs;
PAUL LAGANA, Assistant Administrator - STUs;
GLEN FERGUSON, Clinical Program Director;
MERRILL MAIN, Director of Psychology Dept.;
JOHN DOES 1-40; JANE DOES 1-40, Fictitious Names
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-07-cv-01212)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 21, 2017

Before:  AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 25, 2017)

_____

OPINION[*]
_____

PER CURIAM

Joseph Aruanno appeals from an order of the United States District Court for the

District of New Jersey, which granted summary judgment for the Defendants in

Aruanno's civil rights action.  We will affirm the District Court's judgment.


I.

Aruanno is civilly confined at the Special Treatment Unit ("STU") in New Jersey

pursuant to the New Jersey Sexually Violent Predators Act ("SVPA").  The appeal before

our Court has its origins in a complaint filed in 2007 by Aruanno and four other

plaintiffs.  Upon screening the complaint, which raised numerous claims regarding their

confinement, the District Court dismissed some of the claims with prejudice for failure to

state a claim upon which relief could be granted.  Dkt. ##14, 15.[1]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent

[1] The Court dismissed:  (1) claims that the SVPA violated the Double Jeopardy and Ex
Post Facto clauses of the United States Constitution; (2) claims that the SVPA was
overbroad and vague; (3) claims that there was a federal constitutional right to a jury trial
in civil commitment proceedings; and (4) claims that treatment provided by Defendants
violated the Plaintiffs' Fifth Amendment rights not to incriminate themselves.  As
Aruanno does not raise any of these claims in his appellate brief, we will not discuss
them further.  See Kopec v. Tate, 361 F.3d 772, 775 n. 5 (3d Cir. 2004) (issue waived
unless party raises it in opening brief).

About a year later, the complaint was consolidated with an ongoing class action suit, Alves v. Ferguson, D.N.J. Civ. No. 01-cv-00789. That case was settled in 2012, see Dkt. #145-9, and although some of the plaintiffs (including Aruanno) objected, we affirmed the settlement on appeal. See Alves v. Main, 559 F. App'x 151 (3d Cir. 2014). Aruanno then filed a motion in this case (D.N.J. 07-cv-01212), asking that the matter be deconsolidated from Alves and reinstated. The District Court found that the Alves matter "resolved all claims regarding the adequacy of the STU's mental health programs," but that the settlement had not "encompassed all of [Aruanno's] claims against officials of the Department of Corrections ('DOC') concerning facilities, living conditions, and security measures at the STU." Dkt. #76. The Court thus deconsolidated the matter from Alves and reinstated the non-settled claims to the docket. Id.[2]

Following the deconsolidation, the remaining claims were: "Plaintiff's various Fourteenth Amendment conditions of confinement and equal protection claims (based on his inability to have a job absent treatment participation, the facilities['] phone and computer policies, the use of a Modified Activities Program ("MAP") status[3] as a form of

---

[2] All plaintiffs except Aruanno withdrew from the suit or were dismissed.

[3] Under the MAP program, privileges are curtailed when residents' "internal controls deteriorate such that they pose a threat to the safety of Residents [or] staff, or [their actions] warrant increased external control[]." Dist. Ct. Op. at 7 (internal quotation marks omitted). The program includes four levels of restricted, unescorted movement. The resident is restricted to his room, tier, wing, or "program," depending on "apparent danger." Dkt. #145-7 at 43. Treatment personnel review the resident's MAP status, and levels of restriction may be decreased until the resident is returned to the general population with all privileges reinstated. Id. at 43-47.

discipline, and the prison-like conditions at the STU facility), Plaintiff's Fourteenth Amendment deprivation of property claims, and Plaintiff's Fourth Amendment claims for improper searches of his property." Dkt. #154 at 21. The parties conducted discovery, including a deposition of Aruanno.

The Defendants filed a motion for summary judgment. Aruanno filed a short counter-motion for summary judgment, but he did not refer to documents in the record or provide a statement of material facts. Rather, he argued that there were problems with discovery and that the District Court should have appointed counsel. In its opinion, the District Court denied Aruanno's counter-motion as "woefully inadequate," but declined to treat the Defendants' statement of facts as undisputed. Instead, the Court construed Aruanno's deposition testimony as his statement of facts. The Court described that testimony at length. See Dkt. #154 at 8-14.

The Court then examined each of the remaining claims. The Court determined that summary judgment for the Defendants was warranted as to each of the claims because the conditions did not violate the Constitution, because the Defendants were not aware of the underlying allegations, or because the allegations concerned incidents that were not within the time-frame of the complaint. Aruanno timely appealed.

## II.

We review the District Court's order granting summary judgment de novo and review the facts in the light most favorable to the nonmoving party. Burns v. Pa. Dep't of

Corr., 642 F.3d 163, 170 (3d Cir. 2011). We will affirm if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We agree with the District Court that the Defendants were entitled to judgment as a matter of law.

In civil rights actions, supervisors are not vicariously liable for their subordinates' acts. See Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). As the District Court noted, Aruanno testified at his deposition that he was not aware of any personal involvement of any of the Defendants in the name calling, searches, verbal abuse, or alleged excessive uses of force mentioned in the complaint or at his deposition.

Supervisory liability is allowed, however, if the plaintiff shows that the supervisors: (1) "established and maintained a policy, practice or custom which directly caused the constitutional harm"; or (2) "they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." Id. As for the specific, discrete incidents alleged by Aruanno (as opposed to his claims addressing general conditions), only one occurred prior to the filing of the complaint (Aruanno alleges he was confronted and threatened by a guard who was smuggling contraband into the facility). Dkt. #154 at 24. As Aruanno conceded that the Defendants were not aware of that particular incident until

5

his complaint was filed, Defendants could not have "had knowledge of and acquiesced in [the guard's] violation[]." See Parkell, 833 F.3d at 330.[4]

Aruanno's claims that general conditions violated his constitutional rights might be construed as alleging that the supervisors failed to train, supervise, or discipline their subordinates. But Aruanno did not show that the Defendants were aware of the violations alleged in his complaint, either before or after they occurred. See Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001) (citing City of Canton v. Harris, 489 U.S. 378, 390 (1989) (successful failure-to-train claim requires "evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference"). In sum, the District Court properly determined that Aruanno had failed to establish any plausible claim of supervisory liability. D. Ct. Op. at 20-23.[5]

---

[4] Although the District Court granted summary judgment on Aruanno's claims regarding destruction of property because there is a post-deprivation remedy, see Dkt. #154 at 22 (citing Hudson v. Palmer, 468 U.S. 517, 530-36 (1984)), we note that summary judgment was also warranted on those claims because Aruanno did not show that Defendants were aware of those incidents.

[5] Also, the Court properly declined to consider many of the other allegations Aruanno made at his deposition, including the destruction of property claims, as those allegations involved events that had occurred after the complaint was filed, and the complaint had not been amended. Aruanno argues in his brief here that the time frame should have extended to the time of his deposition, but he did not amend his complaint in the District Court. Thus, the District Court properly determined that the applicable time frame was the two-year period preceding the 2007 filing of the complaint. See Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010) (§ 1983 claim arising in New Jersey subject to two-year statute of limitations).

As for Aruanno's more general conditions of confinement claims, even if Defendants had been aware of those conditions, Aruanno did not show that the STU deprived him of his liberty interest in safe conditions and his right to freedom from undue bodily restraints.[6] See Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). Nor did he show that any of the conditions constituted "punishment" in violation of the Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535 (1979) (detainee may not be punished prior to adjudication of guilt with due process of law); Hubbard v. Taylor, 538 F.3d 229, 231-32 (3d Cir. 2008) (restriction is not punishment if it is reasonably related to legitimate governmental objective). While the MAP system is "punitive," in the larger sense of the word, the "punishment" is not imposed because of the conduct that resulted in the resident's commitment. Instead, it is imposed because of some conduct within the STU that endangers either the other residents or staff, or the resident himself. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473-74 (2015) (to show that condition is "punitive," plaintiff must provide "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"). As the MAP system is reasonably related to the

---

[6] Although Aruanno states in his brief here that "a key issue is being denied a law library, etc.," the complaint at issue here did not contain any allegations regarding the denial of a law library.

7

institution's goals of security and treatment, it is not "punishment" in the legal sense.[7] See id.

The District Court also properly granted summary judgment on Aruanno's equal protection claims. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). And if the complained-of "action does not burden a fundamental Constitutional right or target a suspect class, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (quoting Doe v. Pa. Bd. Prob. and Parole, 513 F.3d 95, 107 (3d Cir. 2008)). Aruanno's equal protection claim was based on his belief that the conditions for sexually violent predators should be the same as those for those who have been committed for mental disabilities. But as the District Court noted, there are rational reasons for different treatment of sexually violent predators and civilly committed mental patients at other facilities. Cf. Taylor v. San Diego Cty., 800 F.3d 1164, 1169 (9th Cir. 2015) (persons civilly committed under California's Sexually Violent Predator Act not similarly situated to those civilly committed under another California law regarding commitment of persons who are a danger to themselves or others, or who are gravely disabled); see also In re Civil

[7] The District Court noted that the program is "designed to control anti-social or dangerous behavior," and "to help the STU resident to regain his self-control and avoid such behavior in the future." Dist. Ct. Op. at 7-8.

8

Commitment of E.D., 803 A.2d 166, 170 (N.J. Super. Ct. App. Div. 2002) ("In enacting the SVPA, the Legislature recognized that under the existing involuntary commitment statutes, persons were subject to commitment only if they were mentally ill, while other individuals who suffered from mental abnormalities or personality disorders which did not qualify as a mental illness under the general civil commitment legislation, presented a similar, if not greater, danger to society.") (citing N.J.S.A. 30:4–27.25(a) and (b)).

As for Aruanno's claims that the refusal to provide him with a job violated his constitutional rights, the District Court properly concluded, as we have before in other cases brought by Aruanno, see Aruanno v.Velez, 500 F. App'x 126, 128 (3d Cir. 2012), and Aruanno v. John/Jane Does 1-10, 536 F. App'x 167, 169 (3d Cir. 2013), that the fact that the STU denies Aruanno a job because he refuses treatment is not a violation of his constitutional rights. Cf. McKune v. Lile, 536 U.S. 24, 35-36 (2002) (transfer of prisoner who refuses to participate in sexual abuse treatment program to more restrictive environment with limited work and wage opportunities does not violate Fifth Amendment). The District Court also properly rejected Aruanno's claim that he should be able to start his own business in confinement, as allowing residents to do so could undermine the safety and treatment goals of the facility. See Hubbard, 538 F.3d 231-32.

9

For the above reasons, and those explained by the District Court, we will affirm the District Court's judgment.[8]

---

[8] Aruanno's motion for appointment of a legal guardian is denied. Despite his confinement, the alleged deprivation of legal materials, and his mental issues, Aruanno has managed to make numerous filings in the District Court and this Court. He is a frequent litigator, having filed around 50 appeals in this Court. His filings are understandable and sufficiently apprise the Court of the issues to be resolved. Although Aruanno claims he is "incompetent," we have in the past affirmed a decision that found no evidence that Aruanno is legally incompetent, and Aruanno has not presented us with any new evidence of ineptitude. See Aruanno v. Davis, 168 F. Supp. 3d 719, 724 (D.N.J. 2016), aff'd, No. 16-1855, 2017 WL 619993 (3d Cir. Feb. 15, 2017). And as we have previously informed Aruanno, we are aware of no legal support for his contention that appointment of an attorney is required under the Americans with Disabilities Act. See Aruanno v. Caldwell, 637 F. App'x 675, 677 n.2 (3d Cir. 2016). For the same reasons, we discern no abuse of discretion in the District Court's decisions to deny Aruanno appointment of counsel or a legal guardian. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993) (court's decision to deny appointment of counsel reviewed for abuse of discretion).